UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-25250-CIV-ALTONAGA/GOODMAN

CARMEN PENA,

    Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

This case challenges a denial of social security benefits. Plaintiff Carmen Pena and Defendant Andrew M. Saul, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 20; 21]. The Commissioner's summary judgment motion also served as his opposition response to Pena's motion. [ECF No. 22]. Pena filed a reply/response in opposition. [ECF No. 23]. According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2].

As explained below, the Undersigned **respectfully recommends** that the District Court **grant** Pena's summary judgment motion, **deny** the Commissioner's summary judgment motion, **reverse** the ALJ's decision, and **remand** for further proceedings

pursuant to 42 U.S.C. § 405(g), with instructions to the ALJ to (1) re-evaluate the evidence to determine whether good cause exists to discount Dr. Kimble's opinion; (2) determine whether Pena requires the use of an assistive device; and (3) otherwise assess the evidence consistent with this Report's recommendations.

I. **Procedural Background**

On June 22, 2017, Pena applied for disability and disability-insurance benefits and on January 23, 2017, Pena applied for supplemental security income, alleging a disability with an onset date of December 27, 2016. (R. 116, 152, 305-14).[1] Pena alleges disability due to depression, fractured right knee, asthma, hypothyroidism, and anemia. (R. 88-89). The Commissioner denied the applications initially and on reconsideration. (R. 156-72). After a hearing on November 19, 2018 (R. 38), Administrative Law Judge Tracey Leibowitz (the "ALJ") concluded that Pena was not disabled. (R. 25). The Appeals Council denied review of the ALJ's decision. (R. 1-8). The Commissioner's final decision is now subject to review.

II. **Factual Background**

Pena was 46 years old on the alleged onset date of January 6, 2017. (R. 302). Pena completed high school in the Dominican Republic. (R. 44). Pena testified that, for seven years, she cleaned a woman's house for $100 a week until she broke her metatarsal bone seven months before the hearing. (R. 45). She lives alone, but her niece comes over

---

[1] Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 15].

occasionally to help her and to drive her to the grocery store and to church. (R. 53). Pena also watches her niece's daughter when her niece does not have childcare for her daughter. (R. 55).

## III. Applicable Legal Standards

### A. *Standard of Review*

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1. **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2. **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3. **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine claimant's residual functional capacity ("RFC"); and then determine:

4. **Step four**. Based on the RFC, can claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5. **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that he is disabled within the meaning

of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports her findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted). The Court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

**IV.    The ALJ's Findings**

In denying Pena's claim for benefits, the ALJ followed the sequential five-step evaluation process for social-security claims. (R. 15-26). At step one, the ALJ concluded that Pena had not engaged in substantial gainful activity since January 6, 2017, the alleged onset date. (R. 18).

At step two, she concluded that Pena had the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the bilateral knees, asthma, hypothyroidism, hypertension, hyperlipidemia, history of cerebrovascular accident, anemia, history of fifth metatarsal fracture, history of ACL repair, obesity, and major depressive disorder. (R. 18).

At step three, the ALJ concluded that Pena did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-20).

Next, the ALJ determined that Pena has the RFC to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations:

> The claimant could lift, carry, push, and/or pull up to 20 pounds occasionally and 10 pounds frequently. She could sit for six hours total in an eight-hour workday, with normal breaks. She could stand and/or walk for six hours total in an eight-hour workday, with normal breaks. She could never climb ladders, ropes or scaffolds. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could tolerate occasional exposure to extreme cold, extreme heat, and hazards. She is limited to simple, routine tasks that can be learned in 30 days or less. She could occasionally interact with supervisors, co-workers, and the public.

(R. 20-21).

At step four, aided by testimony from the vocational expert ("VE"), Jennifer Kramer, the ALJ concluded that Pena does not have any relevant work experience. (R. 24).

Lastly, at step five, the ALJ found that there are jobs existing in significant numbers

in the national economy that Pena can perform, including housekeeping cleaner, cafeteria attendant, and produce sorter. (R. 25). Accordingly, the ALJ found that Pena has not been under a disability from January 6, 2017, through the date of the ALJ's decision (February 6, 2019). (R. 26).

## V. Analysis

Pena raises three arguments. [ECF No. 16]. First, Pena argues that the ALJ failed to properly evaluate the opinion of treating physician Erik Kimble, M.D. and failed to state what weight she was affording to treating physician Myrna Katalina Serna, M.D.'s treatment notes. Second, Pena argues that the ALJ failed to properly assess her RFC. Third, Pena argues that the ALJ failed to properly assess her subjective symptoms. For the reasons discussed below, the Undersigned agrees in part with Pena's arguments.

### A. The ALJ Did Not Provide Good Cause for Discounting the Opinion of Dr. Kimble. But the ALJ Was Not Required to Weigh Dr. Serna's Notes.

Pena argues that the ALJ erred by affording little weight to treating physician Dr. Kimble and by not stating what weight she afforded to Dr. Serna's opinion. The Undersigned agrees that the ALJ did not provide good cause for providing little weight to Dr. Kimble. However, the ALJ was not required to weigh Dr. Serna's progress notes, which were not an opinion on Pena's work limitations.

Generally, an examining or treating physician's opinions are given more weight than non-examining or non-treating physicians' opinions unless "good cause" is shown to the contrary. *See* 20 C.F.R. § 404.1527(d)(1)-(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440

6

(11th Cir. 1997). "Good cause" is shown where the treating physician's opinion was not bolstered by the evidence, was conclusory or inconsistent with the physician's own medical records, or where the evidence supported a contrary finding. *Wilcox v. Soc. Sec. Admin, Comm'r*, 442 F. App'x 438, 440 (11th Cir. 2011); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (holding that because "the ALJ articulated several reasons for giving less weight to the treating physician's opinion[,] . . . the ALJ's determination that [the doctor's] opinion should be given little weight is supported by substantial evidence").

There is no reversible error if the ALJ articulates the reasons for giving less weight to the treating physician's opinion, as long as those reasons are supported by substantial evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

Here, the ALJ states that she provided little weight to Dr. Kimble's opinion that Pena had the following limitations: "no bending or twisting, no hazardous work or equipment use, no lifting, and avoid walking or standing for prolonged periods of time." (R. 594). The ALJ noted that, other than the January 6, 2017 visit, "there is no evidence of any ongoing treatment from the doctor," and thus, "the treating relationship did not last long enough for Dr. [Kimble] to have obtained a longitudinal picture of the claimant's medical condition." (R. 23). Therefore, the ALJ found that his opinion "did not merit the same weight that would be given to a treating physician with a treating relationship of a longer duration." (R. 23).

However, Pena points out that Dr. Kimble saw Pena during other visits.

Before her alleged onset date, Pena saw Dr. Kimble on July 14, 2016 as a follow-up appointment for lab results and Dr. Kimble took her vital signs. (R. 633). Dr. Kimble noted in the clinic notes that Pena complained of bilateral knee pain. (R. 633).

Also, before her alleged disability onset date, on September 12, 2016, Pena visited Dr. Kimble for a scheduled follow-up. (R. 607-09). Dr. Kimble noted that Pena had cervical and knee pain and "possible early [osteoarthritis] of knees 2/2 obesity." (R. 609).

During the January 6, 2017 visit, Dr. Kimble noted that Pena has chronic knee pain and that fifteen days before her visit, she had acute worsening of the pain despite lidocaine patches, Voltaren gel, and ibuprofen. (R. 595).

And on March 2, 2017, Dr. Kimble noted that Pena "continues to have R knee pain, ortho eval[uation] pending. She is having pain in R shoulder associated with cane use." (R. 692). Further, the clinic notes provide:

> Osteoarthritis of both knees
> -Acute worsening of R knee pain. XR with some calcification which may represent chronic avulsion fracture vs enthesopathic changes
> -Continue arthrotec 75
> -Ortho knee referral eval pending
> -XR with osteopenia, dexa not suggestive of osteoporosis
> -Educated on appropriate use of cane. I have offered walker but patient refused.

(R. 694).

Thus, even though the ALJ discussed the March 2, 2017 visit (R. 22), it does not appear that the ALJ was aware that Pena saw Dr. Kimble on March 2, 2017. Four visits

8

over a period of seven months does appear to provide a more longitudinal picture than one single visit. But it is difficult to determine how much more weight the ALJ would have provided to Dr. Kimble if those additional visits were acknowledged.

Further, in support of her decision to accord little weight to Dr. Kimble's opinion, the ALJ states that "the opinion of Dr. [Kimble] is inconsistent with the overall medical evidence, including the contemporaneous treatment notes (i.e., no tenderness to palpitation, joint swelling, local warmth or erythema of the right knee)." (R. 24, 597). The Undersigned has reviewed the contemporaneous treatment notes and the notes do not appear to contradict Dr. Kimble's opinion that Pena had the following limitations: "no bending or twisting, no hazardous work or equipment use, no lifting, and avoid walking or standing for prolonged periods of time." (R. 594). To the contrary, Dr. Kimble's contemporaneous treatment notes consistently reflect that Pena reported right knee pain, had worsening of her right knee, was recommended an orthopedic evaluation, and was offered a walker. (R. 595, 607-09, 633, 692-94).

Other than the record citation to Dr. Kimble's treatment notes, which do not appear to be inconsistent, the ALJ does not specifically point to any other medical record evidence that contradicts his opinion regarding Pena's limitations. And in reviewing the ALJ's decision as a whole, the Undersigned concludes that it is unclear what medical evidence the ALJ may have relied on to discount Dr. Kimble's opinion as to Pena's limitations.

Accordingly, because it is not clear whether substantial evidence supports the ALJ's decision to afford Dr. Kimble's opinion little weight, the Undersigned finds that the ALJ did not provide good cause for discounting Dr. Kimble's opinion. *See Moore*, 405 F.3d at 1212.

Further, it appears that Pena is typically seen by medical residents at Jackson Health, who frequently rotate, and it is noted in the records that Pena is uninsured and thus is limited to conservative treatment. Therefore, it may be difficult for Pena to have an established longitudinal relationship with *any* treating physician. The ALJ may find it helpful to seek out the assistance of an orthopedic consultative examiner to further interpret Pena's physical impairments and to determine whether a cane or other assistive device is prescribed for Pena.

Pena also argues that the ALJ erred by not stating what weight she afforded to the opinions of Dr. Serna, another treating physician at Jackson Health. Specifically, Pena points to the ALJ's failure to discuss and weigh Dr. Serna's note that Pena "continue cane use." Specifically, Dr. Serna's notes provide:

> R knee pain related to medial meniscus tear. Patient reported mild improvement with arthrotec, has done PT, but reports she had more pain following sessions.
> -Continue arthrotec 75
> *-continue cane use*
> -no surgical intervention per ortho, patient will be managed conservatively for now due to insurance status.

(R. 879) (emphasis added).

The Undersigned disagrees with Pena that this note is a medical opinion on the severity of her impairments or Pena's ability to perform work. Thus, the ALJ is not required to state what weight she afforded this note. *See Bilboat v. Berryhill*, No. 16-CV-61705-BB, 2018 WL 1795357, at *2 (S.D. Fla. Mar. 28, 2018) ("[T]he Eleventh Circuit has repeatedly found no error in ALJ decisions that do not weigh statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work.").

However, the Undersigned does find it problematic that the ALJ did not mention Dr. Serna's note that Pena "continue cane use," especially since the VE testified that someone using a cane to ambulate would be unable to perform light work (R. 57-59) and Pena had a number of falls since her alleged onset date. For example, she reported to the Jackson Health emergency department on November 7, 2017, reporting that her knees gave out and she fell. (R. 831-38). She exhibited a tender right upper arm and forearm, as well as swelling and tenderness over the left knee. *Id.* And on March 30, 2018, Pena reported to the Jackson Health emergency department, reporting that she fell and twisted her left ankle and foot. (R. 833-34). She was diagnosed there with ankle sprain, foot sprain, and foot fracture. (R. 833-34). She later underwent an open reduction internal fixation of the fifth metatarsal fracture of the left foot. (R. 947).

Thus, as discussed below, it is also unclear whether the RFC is supported by substantial evidence.

11

**B.    It is Unclear Whether the ALJ's RFC Determination is Supported by Substantial Evidence.**

Pena argues that the ALJ failed to properly assess her RFC because the ALJ improperly rejected Dr. Kimble's opinion about Pena's limitations and Dr. Sena's note stating that Pena "continue cane use." The Undersigned agrees that, because it is unclear whether there was good cause to discount Dr. Kimble's opinion, the ALJ's RFC determination discounting that opinion may be flawed as well. The ALJ determined that Pena has the RFC to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations:

> The claimant could lift, carry, push, and/or pull up to 20 pounds occasionally and 10 pounds frequently. She could sit for six hours total in an eight-hour workday, with normal breaks. She could stand and/or walk for six hours total in an eight-hour workday, with normal breaks. She could never climb ladders, ropes or scaffolds. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could tolerate occasional exposure to extreme cold, extreme heat, and hazards. She is limited to simple, routine tasks that can be learned in 30 days or less. She could occasionally interact with supervisors, co-workers, and the public.

(R. 20-21).

On remand, the ALJ may ultimately provide good cause for finding that Dr. Kimble's opinion is not entitled to great weight. However, if his opinion is provided great weight, it would appear to conflict with the RFC. Dr. Kimble opines that Pena has the following limitations: "no bending or twisting, no hazardous work or equipment use, no lifting, and avoid walking or standing for prolonged periods of time." (R. 594). The RFC provides that Pena can stand for six hours total in an eight-hour workday and it includes

12

no restriction on bending or twisting.

Further, the Undersigned agrees with Pena that the RFC is flawed if Pena requires the use of a cane to ambulate, as mentioned by Dr. Kimble and Dr. Serna in their treatment notes. The ALJ did not discuss Pena's need for a cane or other assistive-device, other than to say that Pena testified that she used the cane when taking the bus or walking long distances. But this does not address whether Pena would require the use of cane when performing the demands of light work.

Accordingly, it is unclear whether substantial evidence supports the ALJ's RFC determination.

### C.     On Remand, the ALJ May Reevaluate Pena's Subjective Complaints

Pena argues that the ALJ failed to properly assess her subjective symptoms of pain and limitations. "[C]redibility determinations are the province of the ALJ, and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citations omitted) (finding ALJ's credibility determination to be supported by substantial evidence where ALJ "pointed to specific reasons for discrediting [the claimant's] subjective complaints of disabling pain"); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("[W]e find that the ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so.").

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements regarding the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record. (R. 23).

The ALJ states that Pena's daily activities, including watching television, going to the hair salon when her sister visits, and caring for her niece's daughter when her niece does not have childcare, are not limited to the extent one would expect for someone with disabling symptoms. *Id.* Further, the ALJ noted that it appeared that Pena could understand some English during the hearing even though she reported she does not speak English. *Id.*

The ALJ has provided specific reasons for discrediting Pena's subjective complaints. However, because the Undersigned is finding that the ALJ did not provide good cause for discounting Dr. Kimble's opinion and because the resulting RFC finding may be flawed, on remand the ALJ may also decide to revisit her credibility determination based on those findings.

## VI.   Conclusion

The Undersigned **respectfully recommends** that the District Court **grant** Pena's summary judgment motion, **deny** the Commissioner's summary judgment motion, **reverse** the ALJ's decision, and **remand** for further proceedings pursuant to 42 U.S.C. § 405(g), with instructions to the ALJ to (1) re-evaluate the evidence to determine whether

good cause exists to discount Dr. Kimble's opinion; (2) determine whether Pena requires the use of an assistive device; and (3) otherwise assess the evidence consistent with this Report's recommendations.

### VII. Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on February 1, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Cecilia M. Altonaga
All counsel of record